NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 27, 2010
Decided June 3, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-3621

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:08-CR-30225-001-DRH |
| | |
| LOUIS E. HOPKINS, | David R. Herndon, |
| *Defendant-Appellant*. | *Chief Judge*. |

**O R D E R**

A jury found Louis Hopkins guilty of possessing a firearm after a felony conviction, 18 U.S.C. § 922(g)(1); distributing crack, 21 U.S.C. § 841(a); and witness tampering, 18 U.S.C. § 1512(b)(1), (3). The district court calculated a guidelines imprisonment range of 46 to 57 months, but imposed a sentence of 108 months. On appeal, Hopkins argues that 108 months is unreasonable. We disagree, and affirm the judgment of the district court.

Hopkins sold a small quantity of crack to an informant on three occasions in late January and early February 2008. Authorities executed a search warrant at his home on February 8 and found three guns—one with an obliterated serial number—and five digital scales. (They also found nine grams of powder cocaine in the home, but it was apparently concealed in a jacket belonging to Hopkins's adult son.) Hopkins was charged in federal

court in November 2008 and detained pending trial.  From jail he tried to persuade his then-wife, LaShonda Campbell, to avoid law-enforcement officers before trial and to testify that the guns did not belong to him.  He had previously tried to get Campbell to sign an affidavit stating that she was responsible for the guns and the cocaine found in the home.  In January 2009 the government obtained a superseding indictment charging Hopkins with one count of violating § 922(g)(1), three counts of distributing crack, and two counts of witness tampering.

After Hopkins was found guilty on all counts, the probation officer issued a presentence investigation report calculating a total offense level of 22 and 3 criminal-history points, which placed Hopkins in criminal-history category II.  The probation officer grouped the six crimes together as if they were one, *see* U.S.S.G. §§ 3D1.1 to 3D1.4, and calculated the offense level using the Chapter 2 guideline applicable to the gun count because that guideline produced the highest total offense level, *see* U.S.S.G. §§ 2K2.1, 3D1.3.  The total offense level of 22 resulted from a base offense level of 14, U.S.S.G. § 2K2.1(a)(6), a 2-level increase due to the number of guns, *id*. § 2K2.1(b)(1)(A), a 4-level increase because the serial number on one of the guns was obliterated, *id*. § 2K2.1(b)(4)(B), and a 2-level increase for obstruction of justice, *see id*. § 3C1.1.  Hopkins, who is 48 years old, had 9 prior convictions as an adult, but those convictions yielded only 1 criminal-history point due to their age.  Five of the prior convictions had involved a gun, but none of those 5 resulted in a jail sentence longer than 13 days.  (In 1989, for example, Hopkins pleaded guilty to reckless conduct—after being charged with firing a pistol in the presence of a state trooper—and spent 13 days in jail.  In 2006, after he and his son were charged with committing armed robbery, Hopkins pleaded guilty to aggravated unlawful use of a weapon by a felon and received 5 days in jail.)  Hopkins received 2 more criminal-history points because he was on probation when he committed the federal crimes, *see* U.S.S.G. § 4A1.1(d), which gave him 3 points total and put him in criminal-history category II.  His resulting imprisonment range was 46 to 57 months.  The district court adopted the probation officer's calculations.

At sentencing the government argued that Hopkins had not been punished adequately in the past and urged the district court to give him 120 months.  A prison term within the guidelines range, in the government's view, would not deter Hopkins or protect the public from future crimes.  The government also contended that Hopkins had no respect for the law, as evidenced by his attempts to obstruct the prosecution and by Campbell's testimony that he always carried a gun despite knowing that his status as a felon was disqualifying.  Hopkins had drafted the affidavit for Campbell to falsely claim ownership of the guns, and he told her to hide and avoid talking to law-enforcement agents until his trial was over.  He also told other family members and neighbors to lie about where he lived.  In addition, the government presented evidence of witness tampering for which Hopkins was not charged.  An agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives

testified that Campbell had told him she and her sister were carjacked by Hopkins's nephew—who said he was acting on orders from Hopkins—and another time she was chased by the nephew and threatened with death if she did not help her husband. The agent testified that Campbell believed Hopkins was behind the second incident.

The agent addressed Hopkins's involvement in other criminal conduct as well. Hopkins, he recounted, was the prime suspect in the ongoing investigation of the 2006 murder of Jamal Williams, a friend of Campbell's. Campbell had told the agent that Hopkins accused her of having an affair with Williams. According to the agent, state investigators believed that Williams had been speaking on the telephone when Hopkins confronted and shot him after an argument that the other party to the phone call overheard. The agent added that Campbell had also said she was told by Hopkins not to worry about the guns found in the home because "none of them had any murders on them."

Hopkins, who did not testify or present any evidence at the sentencing hearing, argued that the guidelines range adequately took into account his criminal history and that 57 months would be an appropriate sentence. That was long enough, according to Hopkins, because the drug counts involved only 0.3 grams of crack in total, there was no evidence that he used the seized guns while selling crack or to threaten anyone, and—he insisted—there was insufficient evidence that his obstructive conduct involved threats.

The district court concluded that 108 months—almost twice the upper end of the guidelines range—was appropriate for Hopkins. In evaluating the nature and circumstances of the counts of conviction, *see* 18 U.S.C. § 3553(a)(1), the court observed that Hopkins had committed three "very serious" types of crimes which, because of the grouping rules, would not be adequately punished by a guidelines sentence. In the court's opinion, the inclusion of all six counts into a single group meant that Hopkins wasn't being punished at all for selling crack and was getting nothing but a 2-level increase under U.S.S.G. § 3C1.1 for obstruction of justice. The district court thought it particularly inappropriate that the incremental punishment Hopkins faced for his obstruction was so low relative to the guidelines range for possessing a gun with an obliterated serial number, especially because the witness tampering might cause Campbell to fear for her life "now and in the future." The court found, by a preponderance of the evidence, that Hopkins had ordered the carjacking and death threat to discourage Campbell from cooperating with investigators. Thus the guidelines range, according to the court, did not account for the "extreme" witness tampering in this case.

The district court evaluated Hopkins' history and characteristics, *see* 18 U.S.C. § 3553(a)(1), and observed that his criminal behavior had escalated since his first conviction, for theft, at age 18. His subsequent convictions included drug crimes, and several involved

firearms.  Most of Hopkins's convictions did not count toward his criminal-history score, which in the court's view meant that the guidelines understated his propensity for criminal behavior.  The court found by a preponderance of the evidence that Hopkins had committed the murder of Jamal Williams, and although the court noted that the murder would make "no difference" in its choice of sentence, the court did say that the murder "certainly confirms the Court's conclusion that the defendant is a habitual criminal."

The district court imposed a 48-month term for the § 922(g) count; three concurrent terms of 24 months for the crack distribution (but consecutive to the gun count), and concurrent 36-month terms for the witness-tampering offenses (but consecutive to everything else) for a total of 108 months.  The court explained that, if each of the three types of crimes was considered independently, the imprisonment range for the gun count would be 37 to 46 months, the range for the drug offenses would be 12 to 18 months, and the range for the witness tampering would be 18 to 24 months.  The court observed that its sentences, relative to these putative ranges, represented a sentence within the range for the firearm conviction, a 6-month increase above the range for the drug convictions, and a 12-month increase above the range for witness tampering.  (The court appears to have made a small error: The 48-month sentence for the gun crimes is actually two months above the corresponding standalone range.)

On appeal Hopkins argues that the district court acted unreasonably by imposing a total term of imprisonment above the guidelines range.  He does not make an argument about the court's calculation of the guidelines range or its application of the § 3553(a) factors, nor does he take issue with the court's methodology or any of its reasons for going above the range calculated by the probation officer and adopted by the court.  Instead, Hopkins's argument to us is simply a disagreement with the district court's exercise of its sentencing discretion.  As he did in the district court, Hopkins emphasizes that his crack sales were small, and although he admits encouraging Campbell and others to lie for him and duck law enforcement, he continues to insist that he never threatened to harm Campbell.  And despite his admittedly "significant history of possessing firearms," Hopkins contends that his many uncounted convictions and low criminal-history score weigh against an above-range sentence.

We review a sentence—even a sentence outside the guidelines range—for reasonableness. *See Gall v. United States*, 552 U.S. 38, 56 (2007); *United States v. Mays*, 593 F.3d 603, 609 (7th Cir. 2010).  Hopkins contends that the district court should have adhered to the range produced by the court's application of the grouping rules, but he is incorrect to suggest that the facts of his case had to be out of the ordinary to allow the district court to deviate from the guidelines; to the contrary, the court was free to reject the grouping rules so long as it acted reasonably in sentencing him. *See Spears v. United States*, 129 S. Ct. 840,

843-44 (2009); *United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc). The district court plainly disagrees with the grouping rules, but after *United States v. Booker*, 543 U.S. 220 (2005), that is the court's prerogative. The court evaluated the § 3553(a) factors and concluded that a sentence above the guidelines range was justified, and that determination is entitled to deference. *United States v. Wise*, 556 F.3d 629, 632-33 (7th Cir. 2009). The court adequately explained why it chose 108 months as an appropriate term of imprisonment. Hopkins's unhappiness with the sentence does not make that sentence unreasonable.

To the extent that Hopkins is challenging the district court's finding that he directed the carjacking and the death threat against Campbell, we will uphold that factual determination unless it is clearly erroneous; it is not. *See Mays*, 593 F.3d at 609. Although at trial Campbell testified that she did not *know* if Hopkins was behind the carjacking, she also testified that Hopkins's nephew had *said* Hopkins ordered the carjacking. The ATF agent testified at sentencing that Campbell said that the nephew put a gun to her head during the carjacking and explained to her that Hopkins had ordered him to do so. The agent also testified that Campbell and her sister both told him in interviews that they believed Hopkins was behind the death threat. A sentencing court may consider hearsay testimony as long as it bears sufficient indicia of reliability and the defendant has an opportunity to rebut it. *See United States v. Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009). Hopkins was able to cross-examine Campbell during the trial and the ATF agent at sentencing, but the court nevertheless found that he orchestrated the carjacking and death threat. Given the evidence, we cannot conclude that the district court's finding was clearly erroneous.

Accordingly, we AFFIRM the judgment of the district court.